JUDGE BRICCETTI

SOL:MMS
(12) 00985

# 12 CIV 8649

UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------

HILDA L. SOLIS, Secretary of Labor,                  :
United States Department of Labor,
                                                      :
                                    Plaintiff,        :        Civil Action File
                                                      :
                         v.                           :        No.
                                                      :
FIRST BANKERS TRUST SERVICES, INC.,                           COMPLAINT
FRANK FIROR, and REMBAR EMPLOYEE          :
STOCK OWNERSHIP PLAN,                                 :
                                    Defendants.       :
                                                      :
---------------------------------------------------------------

     Plaintiff Hilda L. Solis, Secretary of the United States Department of Labor (the
"Secretary of Labor"), alleges:

     1.     This action arises under the Employee Retirement Income Security Act of 1974
("ERISA"), 29 U.S.C. § 1001, et seq., and is brought by the Secretary of Labor under ERISA §§
502(a)(2) and (5), 29 U.S.C. §§ 1132 (a)(2) and (5), to enjoin acts and practices which violate the
provisions of Title I of ERISA, to obtain appropriate relief for breaches of fiduciary duty under
ERISA § 409, 29 U.S.C. § 1109, and to obtain other appropriate relief to redress violations and
enforce the provisions of that Title.

JURISDICTION AND VENUE

2.     This Court has jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

3.     Venue of this action lies in the Southern District of New York pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), where the Rembar Company, Inc. Employee Stock Ownership Plan (the "Plan" or "ESOP") was administered and where the breaches alleged herein took place.

DEFENDANTS

4.     The ESOP is a pension plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2).   The ESOP is named as a Defendant in this Complaint solely for the purpose of ensuring complete relief among the parties under Fed. Rule Civ. P. 19.  The ESOP is sponsored by The Rembar Company Inc. (hereinafter "Rembar" or the "Company"), a New York corporation engaged in the distribution and manufacturing of precision parts made from refractory metals.   Rembar is headquartered in Dobbs Ferry, NY where the ESOP is also administered.

5.     At all times relevant, Defendant First Bankers Trust Services, Inc. ("First Bankers Trust") was the Trustee of the ESOP ("Trustee") and exercised discretionary authority and control over management and disposition of the ESOP's assets and therefore was a fiduciary. ERISA § 3(21), 29 U.S.C. § 1002(21).

6.     At all times relevant, Defendant Frank Firor ("Firor") was Chief Executive Officer, Chairman of the Board of Directors, President and, until he sold his stock to the ESOP, the majority stockholder of the Company.  Defendant Firor appointed Defendant First Bankers Trust as the ESOP's Trustee, and consequently, Defendant Firor had fiduciary authority over plan

management and administration and, in particular, the fiduciary authority over and the obligation to monitor Defendant First Bankers Trust in the performance of its fiduciary obligations in connection with the decision to spend all of the ESOP's assets – more than $15 million dollars – on Rembar stock. Defendant Firor was thus a fiduciary of the ESOP pursuant to ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). Defendant Firor is a New York resident.

7.      At all times relevant, Defendant Firor was a party in interest with respect to the ESOP due to his status as an employee, officer and director of Rembar, a fiduciary of the ESOP, and as the majority shareholder of Rembar. ERISA §§ 3(14)(A), (E) and (H). 29 U.S.C. §§ 1002(14)(A), (E) and (H).

8.      Although not named as defendants herein, two other individuals who, along with Defendant Firor, sold their stock to the ESOP in the improper transaction discussed herein were also parties in interest with respect to the ESOP pursuant to ERISA. Virginia Keilty (who sold 11,700 shares to the ESOP in the transaction described below) was an officer and director of Rembar and thus a party in interest with respect to the ESOP pursuant to ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H). Rosemary Brockett (who sold 6,345 shares to the ESOP in the transaction described below) was Defendant Firor's mother and a director of Rembar and thus a party in interest with respect to the ESOP pursuant to ERISA §§ 3(14)(F) and (H), 29 U.S.C. §§ 1002(14)(F) and (H).

## FACTUAL ALLEGATIONS

9.      The ESOP was adopted by Rembar in June of 2005 with an effective date of January 1, 2005.

10.     On or about June 16, 2005, Rembar's Board of Directors approved the ESOP's purchase of 100% of the Company's stock via an executed Written Consent of Directors. Of the

five directors who approved the transaction, three (Defendant Firor, Keilty and Brockett) collectively owned, and were selling, 100% of the Company's outstanding stock to the ESOP ("Selling Shareholders"). The remaining two directors were spouses of Selling Shareholders.

11.     On or about June 17, 2005, the ESOP purchased, at a cost of $15.5 million, 100% of the outstanding stock of Rembar Inc. (100,000 shares) from the Selling Shareholders (the "ESOP Transaction").

12.     The ESOP Transaction was funded by a loan from the Company to the ESOP in the amount of $15,500,000 (the "ESOP Loan").  Pursuant to the ESOP Loan, the ESOP executed a promissory note in the principal amount of $15,500,000 in favor of the Company (the "ESOP Note"), and pledged the acquired stock to secure payment of the ESOP Note.  In addition, as part of the financing of the ESOP Loan, Defendant Firor and the other Selling Shareholders made subordinated loans to the Company in the aggregate amount of $6,500,000.  The subordinated loans ("Subordinated Notes") were structured to be repaid in ten (10) annual installments.

13.     The ESOP Transaction was approved on behalf of the ESOP by Defendant First Bankers Trust, who was hired as a Trustee solely to represent the interests of the ESOP and its participants and beneficiaries.  Defendant First Bankers Trust conditioned its engagement as Trustee upon retaining Empire Valuation Consultants, LLC ("Empire") to serve as appraiser and to conduct a stock valuation for purposes of negotiating the purchase price to be paid by the ESOP.

14.     In connection with the ESOP Transaction, Defendant First Bankers Trust had a duty to make certain that its reliance upon Empire's advice was reasonably justified under the circumstances. To this end, Defendant First Bankers Trust was obligated to read Empire's valuation report, understand the report and to identify, question and test Empire's underlying assumptions.  In addition, Defendant First Bankers Trust was obligated to verify that Empire's

conclusions were consistent with the data provided to Empire and that the appraisal was internally consistent.  Defendant First Bankers Trust failed to comply with these duties under ERISA and, as described below, caused the ESOP to overpay for the stock purchased in the ESOP Transaction.

15.     Empire obtained the information it used to value Rembar stock from sources that included Defendant Firor, Defendant First Bankers Trust, various officers of Rembar, Rembar's outside accountant, and an investment bank named Corporate Solutions Group, LLC, ("CSG"), which Rembar had earlier hired to perform an employee stock ownership plan feasibility study. Empire's valuation of the Company stock relied upon financial projections of Rembar that were prepared by CSG.

16.     The forecast prepared by CSG and relied upon by Defendant First Bankers Trust presumed that the Company would not have to hire a Chief Executive Officer and that all discretionary compensation that had previously gone to certain of the Company's executive employees would be available to the ESOP as the sole shareholder of the Company.  The forecast made no provision for the payment of discretionary compensation for the Company's Chief Executive Officer after the ESOP Transaction. Thus the valuation failed to take into account the costs of obtaining and maintaining the services of a Chief Executive Officer who previously had been compensated largely through discretionary compensation.  Based upon this erroneous assumption and other assumptions, Empire valued the Company's operations at $10.18 million.

17.     Defendant First Bankers Trust further erred in relying upon Empire's appraisal report because, even though CSG's forecast of Rembar was prepared on a controlling interest basis (as evidenced by the decision to exclude any discretionary compensation for the Chief Executive Officer in the cash flows relied on by Empire as described in the previous paragraph, as well as

other addbacks that were made), Empire then added an additional 25% "control premium" to the valuation, thus improperly increasing the amount that the ESOP paid by more than $2.5 million.

18.     Defendant First Bankers Trust knew or should have known that application of a "control premium" to Empire's valuation result was not warranted and was, in fact, in error.  Not only was the "control premium" inconsistent with Empire's selected valuation methodology (which relied on cash flows prepared on a controlling interest basis, thus making application of an explicit control premium duplicative), but, it was also inconsistent with an agreement which Defendant First Bankers Trust had executed with Defendant Firor and Rembar along with the ESOP Transaction documents.

19.     Specifically, contemporaneously with the ESOP Transaction, Defendant First Bankers Trust, Defendant Firor, and Rembar entered into a Limitation Agreement which contained a number of covenants by each of the three signatories which significantly limited the ESOP's post-transaction ability to exercise control over the Company it was ostensibly purchasing. Section 3.2(d) of the Limitation Agreement provided that:  "For so long as the Seller Subordinated Note in favor of Frank Firor is outstanding, the Trustee, acting on behalf of the Trust, shall vote all of the shares of Common Stock held by the Trust to cause the Board of Directors to be at all times comprised of a majority of directors designated by Frank Firor."

20.     Additionally, section 3.1(h) of the Limitation Agreement committed Rembar itself to Defendant Firor's post-transaction control of Rembar:  "So long as the Seller Subordinated Note in favor of Frank Firor is outstanding, the Company shall take all appropriate actions to cause the Board of Directors to be at all times comprised of a majority of directors designated by Frank Firor."  Thus, even though the ESOP was purchasing 100% of the Company's stock in the ESOP

Transaction, the Limitation Agreement guaranteed, Defendant Firor's control of the Company after the ESOP Transaction.

21.     Empire's valuation report, however, ignored the Limitation Agreement and its terms and, instead, erroneously explained that an additional control premium was appropriate because of the prerogatives of control that the ESOP would obtain through its ownership of more than 50% of the Company's outstanding stock.  Empire specifically identified that the ESOP was paying a control premium for the authority to:

- Determine management compensation and perquisites;

- Declare and pay dividends;

- Sell or acquire assets and/or liabilities;

- Change the articles of incorporation or by-laws; and

- Liquidate, dissolve, sell, or recapitalize the company.

In fact, the ESOP obtained none of these benefits as part of the ESOP Transaction as a result of the Limitation Agreement signed by all the parties.  Instead, all of those powers remained with Defendant Firor (through his power to control the Board of Directors).

22.     The valuation report performed by Empire also contained additional errors which Defendant First Bankers Trust knew, or should have known, made reliance upon the report improper.  For example, Empire improperly calculated the discount rate in connection with its application of two 'income approach" valuation methods by assuming, without explanation or basis in fact, that the capital structure of the Company would be 50% equity and 50% debt.  The Company's capital structure before (zero debt) and after the ESOP Transaction, however, was never 50/50 debt to equity and none of the comparable companies identified by Empire had a capital structure with this high a level of debt (i.e., 50%).  Empire also applied other improper

assumptions to arrive at a discount rate that improperly inflated the amount the ESOP paid in the ESOP Transaction. Defendant First Bankers Trust never questioned the capital structure applied by Empire in its valuation, the discount rate as calculated by Empire or other assumptions that resulted in the stock being overvalued.

23.    Defendant First Bankers Trust's reliance on Empire's valuation was thus unreasonable considering the fundamental flaws enumerated above. As a result, Defendant First Bankers Trust failed to prudently and loyally represent the interests of the ESOP and its participants and beneficiaries, and caused the ESOP to overpay for the Selling Shareholders' stock by an amount in excess of $2.5 million dollars above fair market value, and thereby caused a loss to the ESOP in said amount, plus lost opportunity cost.

24.    At the time of the ESOP Transaction, as the person who appointed Defendant First Bankers Trust as Trustee of the ESOP in connection with the ESOP Transaction, Defendant Firor was obligated to monitor the activities of Defendant First Bankers Trust and to remove Defendant First Bankers Trust as Trustee if Defendant Firor knew, or should have known, that Defendant First Bankers Trust was not acting in compliance with its own fiduciary duties under ERISA.

25.    Among other reasons, as a signatory to the Limitation Agreement, Defendant Firor knew, or should have known, that Defendant First Bankers Trust had improperly consented to the ESOP's payment of a control premium even though Defendant Firor knew that the ESOP was not going to obtain control of the Company. Defendant Firor also knew, or should have known, that the forecast upon which Defendant First Bankers Trust was relying, the forecast prepared by CSG, already accounted for the benefits of control and that Defendant First Bankers Trust was causing the ESOP to inappropriately pay for the same control at least twice (control

cash flows and control premium), when Defendant First Bankers Trust agreed to a control premium in excess of $2.5 million.

26.     In connection with the ESOP Transaction, Defendant Firor failed to ensure that Defendant First Bankers Trust fulfilled its own fiduciary duties and failed to prevent the ESOP's purchase of shares at a price he knew, or should have known, was inflated due to a flawed valuation and the terms of the Limitation Agreement (which he signed for his own benefit) and to otherwise comply with his own fiduciary duty to act prudently and solely in the interests of the participants and beneficiaries of the ESOP.

<u>VIOLATIONS</u>

<u>FIRST CAUSE OF ACTION</u>
Disloyalty, Imprudence, Failure to Comply With Plan Documents:
ERISA §§ 404(a)(1)(A), (B) & (D)

27.     In connection with the ESOP Transaction, Defendant First Bankers Trust breached its fiduciary duties to the ESOP, of which it was a fiduciary, to act solely in the interest of the participants and beneficiaries with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA §§ 404(a)(1)(A) & (B), 29 U.S.C. § 1104(a)(1)(A) & (B), by, among other things:

  a.     Failing to carry out a meaningful review of Empire's valuation,

  b.     Failing to understand and question Empire's findings, assumptions or methodologies,

      c.     Failing to ensure that Empire's valuation was consistent with the Limitation Agreement executed by Defendant First Bankers Trust on behalf of the ESOP,

      d.     Failing to independently determine that the ESOP was paying not more than fair market value for stock,

      e.     Approving the ESOP's purchase of stock despite knowing that the valuation upon which it was based, was inflated and fatally flawed, and

      f.     Paying vastly more than fair market value for the stock.

28.     As a result of the foregoing imprudent and disloyal acts and omissions, Defendant First Bankers Trust caused losses to the ESOP for which it is jointly, severally and personally liable pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a).

29.     As set forth above, Defendant Firor, as the individual who appointed Defendant First Bankers Trust as Trustee, failed to monitor, oversee or remove Defendant First Bankers Trust in violation of his duties and loyalty and prudence, ERISA §§ 404(a)(1)(A) & (B), 29 U.S.C. §§ 1104(a)(1)(A) & (B). As a result of these imprudent and disloyal acts and omissions, Defendant Firor caused losses to the ESOP for which, he is jointly, severally and personally liable pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a).

30.     Defendant First Bankers Trust violated its fiduciary duty to exercise its responsibilities solely in accordance with the documents and instruments governing the ESOP insofar as such documents and instruments are consistent with Title I of ERISA in violation of ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), when it failed to, among other things, prudently invest the ESOP's assets in stock, and failed to prudently determine or verify the fair market value of the Company's stock as of the date of the ESOP Transaction.

31.     Defendants First Bankers Trust and Firor each (a) participated in each of the breaches of duty of their co-fiduciary, (b) enabled their co-fiduciary to breach their own duties relating to the ESOP Transaction, (c) knew or should have known of their co-fiduciary's breaches of fiduciary duty and failed to take action to prevent their co-fiduciary's breaches of fiduciary duty, and (d) failed to make reasonable efforts under the circumstances to remedy those breaches of duty.  Accordingly, Defendants First Bankers Trust and Firor are each liable as co-fiduciaries for the losses caused to the ESOP.  ERISA §§ 405(a)(1), (2) & (3), 502(a)(2) & (5), 29 U.S.C. §§ 1105(a)(1), (2), & (3), 1132(a)(2) & (5).

SECOND CAUSE OF ACTION<br>Violations of ERISA §§ 406(a)(1)(A) and (D)<br>Prohibited Transactions

32.     Defendant First Bankers Trust caused the ESOP to acquire stock in the ESOP Transaction by purchasing the shares from parties in interest within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

33.     The ESOP's acquisition of stock from parties in interest violated ERISA §§ 406(a)(1)(A) and (D), 29 U.S.C. §§ 1106(a)(1)(A) and (D), which prohibit a fiduciary from causing a plan to engage in a transaction if he knows or should know that such transaction constitutes a direct or indirect sale or exchange, or leasing, of any property between the plan and a party in interest; or transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan.

34.     Thus, by approving the ESOP Transaction on behalf of the ESOP, Defendant First Bankers Trust caused the ESOP to engage in prohibited transactions.

35.     ERISA § 408(e), 29 U.S.C. § 1108(e), provides an exemption to the prohibited transaction requirements by allowing plans to purchase stock from parties in interest as long as

the price paid does not exceed adequate consideration. Adequate consideration is defined in ERISA § 3(18), 29 U.S.C. § 1002(18) as the "fair market value of the asset as determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with the regulations promulgated by the Secretary [of Labor]."

36.     By causing the ESOP to acquire stock at a price that exceeded "adequate consideration," and failing to conduct a prudent and good faith investigation of Empire's valuation process and conclusion for the stock acquired by the ESOP, Defendant First Bankers Trust failed to meet the conditions of any of the exemptions in ERISA § 408, 29 U.S.C. § 1108, including ERISA § 408(e), 29 U.S.C. § 1108(e).

37.     As a result of the fiduciary breaches described above, Defendant First Bankers Trust caused the ESOP to suffer financial losses for which Defendant First Bankers Trust is personally, jointly and severally liable pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a).

38.     As set forth above, Defendant Firor is a party in interest within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14), who knowingly participated in the nonexempt prohibited transaction as described herein.  Defendant Firor, therefore, may be made subject to such other appropriate equitable relief to redress the violations in which he knowingly participated including undoing the transaction in which he sold stock to ESOP or returning the amount by which he was overpaid in the ESOP Transaction.  ERISA § 502(a)(5), 29 U.S.C. § 1132(a)(5).

39.     As set forth above, Defendants First Bankers Trust and Firor each (a) participated in each of the breaches of duty of their co-fiduciary, (b) enabled their co-fiduciary to breach their own duties relating to the ESOP Transaction, (c) knew or should have known of their co-fiduciary's breaches of fiduciary duty and failed to take action to prevent their co-fiduciary's breaches of fiduciary duty, and (d) failed to make reasonable efforts under the circumstances to

remedy those breaches of duty.  Accordingly, Defendants First Bankers Trust and Firor are each liable as co-fiduciaries for the losses caused to the ESOP.  ERISA §§ 405(a)(1), (2) & (3), 502(a)(2) & (5), 29 U.S.C. §§ 1105(a)(1), (2), & (3), 1132(a)(2) & (5).

PRAYER

WHEREFORE, the Secretary of Labor prays that this Court enter an Order:

1.      Requiring Defendants First Bankers Trust and Firor to jointly and severally restore all losses caused to the ESOP as a result of their fiduciary breaches;

2.      Requiring Defendant Firor to forfeit his ESOP account in order to offset all or part of any judgment ordered against him;

3.      Requiring Defendant Firor to disgorge any and all ESOP assets obtained by him and to disgorge any and all profits earned by him from those assets;

4.      Requiring the defendants to correct or undo the prohibited transaction to the extent practicable;

5.      Enjoining Defendants First Bankers Trust and Defendant Firor from serving as fiduciaries or service providers to ERISA plans in the future; and

6.      Granting such other relief as may be equitable, just and proper.

DATED:        November 28, 2012
              New York, New York

                                        Respectfully submitted,

                                        M. PATRICIA SMITH
                                        Solicitor of Labor

                                        PATRICIA M. RODENHAUSEN
                                        Regional Solicitor

                                        MATTHEW M. SULLIVAN
                                        Attorney

                                        U.S. Department of Labor,
                                        Attorneys for Plaintiff

POST OFFICE ADDRESS:

Patricia M. Rodenhausen
Regional Solicitor
U.S. Department of Labor
201 Varick Street, Room 983
New York, New York  10014
Tel. 646-264-3679
e-mail: NY-SOL-ECF@dol.gov